mitigating circumstances you find are present in this case.

In general terms, aggravating and mitigating circumstances are circumstances concerning the killing and the killer, *which make a first degree murder case either more serious or less serious.*

(N.T. 5/20/88 p. 733).

This issue was also addressed in the recent opinion of *Laird.* For the reasons stated therein, the allegation is also rejected in this case. *Laird,* 726 A.2d at 360.

Petitioner next claims that he was denied meaningful proportionality review when this court conducted that review in his direct appeal. Petitioner asserts that because he was never provided the materials upon which this court relied in conducting that review he was not afforded "meaningful" proportionality review. Petitioner alleges the ineffectiveness of appellate counsel for failing to raise this challenge and investigate the data complied by the Administrative Office of the Pennsylvania Courts. (AOPC).

 As for petitioner's allegation that he was not provided information compiled by the AOPC for his proportionality review, petitioner fails to state when and from whom he requested the information. We note that the information gathered by the AOPC for use in death penalty proportionality review is available to the general public free of charge. *Commonwealth v. DeHart,* 512 Pa. 235, 516 A.2d 656 (1986). The substance of petitioner's claim is that he was deprived of due process because he was not afforded an opportunity to respond to the information used by the court in reaching a decision on the proportionality of his sentence. Proportionality review is not an adversarial proceeding. Proportionality review is an appellate process, statutorily mandated, to ensure that sen-

tences of death are not imposed by Pennsylvania juries and/or jurists, in a disproportionate manner. *Commonwealth v. Banks,* 540 Pa. 143, 656 A.2d 467, 474 (1995). Petitioner's claims regarding the proportionality review conducted by this court in his direct appeal are without merit.[16]

 Finally petitioner claims he is entitled to relief on the weight of the cumulative errors compiled herein. As this court has rejected each of petitioner's specific claims of error there can be no cumulative effect. Thus, petitioner's final claim does not warrant relief. *Commonwealth v. Williams,* 532 Pa. 265, 615 A.2d 716 (1992).

For the foregoing reasons we affirm the denial of post-conviction relief.[17]

Justice NIGRO concurs in the result.

**COMMONWEALTH of Pennsylvania acting through the UNIFIED JUDICIAL SYSTEM by the agency of the Administrative Office of Pennsylvania Courts, Appellant,**

**v.**

**John O. VARTAN, trading as Independent American Investments, a registered fictitious name, Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 17, 1997

Submitted Feb. 18, 1999 (on previously filed briefs).

Decided July 1, 1999.

**16.** We note that the provision of the death penalty statute requiring proportionality review was stricken by legislative enactment. 42 Pa.C.S. § 9711(h), as amended June 25, 1997, No. 28 § 1 (Act 28), effective immediately. *See Commonwealth v. Gribble,* 550 Pa. 62, 703 A.2d 426, 440 (1997).

**17.** The Prothonotary of the Supreme Court is directed to transmit the complete record of this case back to the Governor. 42 Pa.C.S. § 9711(i).

Paul H. Titus, Charlottesville, David G. Oberdick, Diane Calaboyias Wyrick, Pittsburgh, for Administrative Office of PA Courts.

Thomas W. Scott, Killian & Gephart, Harrisburg, for John O. Vartan.

Before CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

NEWMAN, Justice.

We granted allocatur to determine whether the Board of Claims may issue a subpoena to former Chief Justice Robert N.C. Nix, Jr. (Chief Justice Nix) to give deposition testimony in a contract dispute arising out of the construction of a court house for the Commonwealth Court.

### Facts

The Administrative Office of Pennsylvania Courts (AOPC) entered into a written lease agreement with John O. Vartan (Vartan) on October 10, 1989 for a parcel of land, on which Vartan was to build a court-house for the Commonwealth Court. The contract was contingent upon AOPC obtaining all government approvals, which in its sole discretion, it deemed necessary for the project and the lease. Pursuant to the contract, AOPC had no obligation to seek or obtain the necessary approvals, and could terminate the contract without incurring liability. Paragraph 4(b) of the Lease provides

> *Tenant's Approvals.* Promptly after the execution of this Lease, Tenant may, but shall not be obligated to seek to obtain such resolutions or enactments or approvals from the legislative, judicial and/or executive branches of the Commonwealth of Pennsylvania, as Tenant, in its sole opinion, deems necessary and appropriate with respect to this Lease. If within 60 days from the execution of this Lease Tenant has not received such resolutions, enactments or other approvals as Tenant, in its sole opinion, deems appropriate, Tenant shall have the right, exercised n writing not later than five business days after the end of such 60 day period, to terminate this Lease by written notice to Landlord, whereupon this Lease shall become null and void and neither party shall have any further obligation to the other, provided that Tenant's contingency shall not lapse or

expire unless and until Landlord shall have given to Tenant notice of Tenant's failure to exercise such termination right and Tenant shall have 30 days after receipt of such notice within which to timely exercise its termination right.

On February 26, 1990, Former President Judge James Crumlish, Jr. of the Commonwealth Court sent a letter to Vartan's counsel, stating

Pursuant to Section 4(b) of the Lease Agreement, this is to advise you that the tenant has sought to obtain such approvals from the legislative, judicial and/or executive branches, as the tenant deems necessary and appropriate.

It is the intention of the tenant to proceed pursuant to the terms of the lease.

By letter dated June 6, 1990, the Court Administrator of Pennsylvania, Nancy M. Sobolevitch (Sobolevitch) wrote to Vartan's attorney stating that AOPC was terminating their agreement pursuant to Paragraph 4(b) of the Lease, because "Tenant has sought the approval of the judicial branch of the Commonwealth of Pennsylvania, which it deems necessary and appropriate with respect to the Lease, and has not received such approval."

On November 20, 1990, Vartan filed a Complaint with the Board of Claims in which he asserted that representations made in President Judge Crumlish's letter of February 26, 1990 "were intended to foreclose the possibility of any termination of the Lease under the provisions ... of Paragraph 4(b)." Complaint at 3. The Complaint further states that in reliance upon the Lease and the representations of the AOPC's representatives, Vartan expended time, effort and funds, and experienced loss of revenue and preferential tax treatment in the estimated total amount of $6,500,000.00. Complaint at 5–6.

The Board sustained preliminary objections filed by the AOPC, and dismissed the Complaint on June 30, 1991. The Commonwealth Court reversed the Board's decision and remanded the matter. The AOPC filed a Petition for Allowance of Appeal, which this Court denied on July 19, 1993. The matter proceeded to the discovery phase, during which AOPC responded to Vartan's interrogatories. Vartan also took the depositions of Court Administrator Sobolevich, the Executive Administrator of the Commonwealth Court, G. Ronald Darlington, and Former President Judge David Craig of the Commonwealth Court. On April 25, 1995, Vartan forwarded to counsel for the AOPC a Notice of Deposition to Chief Justice Nix, with an attached subpoena issued by the Board. On May 10, 1995, the AOPC filed a Motion to Quash the Subpoena, which the Board denied on July 5, 1995.

The AOPC filed a Petition for Review of Governmental Determination in the Nature of a Petition for a Writ of Prohibition and/or Mandamus in the Commonwealth Court on August 7, 1995. Vartan filed Preliminary Objections, in response to which the AOPC filed an Amended Petition on September 15, 1995. Vartan again filed Preliminary Objections, which the Commonwealth Court granted on April 15, 1996, thus dismissing the Amended Petition. The AOPC then filed a Petition for Allowance of Appeal, which this Court granted.

*Discussion*

I.

The Commonwealth Court granted Vartan's Preliminary Objections on the basis that AOPC had failed to establish a clear right to either a writ of prohibition or a writ of mandamus. With regard to the writ of prohibition, the Commonwealth Court cited this Court's decision in *Carpentertown Coal & Coke Co. v. Laird,* 360 Pa. 94, 98, 61 A.2d 426, 428 (1948), in which we stated:

Its principal purpose is to prevent an inferior judicial tribunal from assuming a jurisdiction with which it is not legally vested in cases where damage and injustice would otherwise be likely to follow from such action. It does not seek relief from any alleged wrong threatened by

an adverse party; indeed it is not a proceeding between private litigants at all, but solely between two courts, a superior and an inferior, being the means by which the former exercises superintendence over the latter and keeps it within the limits of its rightful powers, and jurisdiction.

The Commonwealth Court noted that the Board has jurisdiction to issue and enforce subpoenas pursuant to Section 7 of the Board of Claims Act, Act of May 20, 1937, P.L. 728, *as amended,* 72 P.S. § 4651–7, which provides in relevant part:

> The secretary of the Board shall have the power to issue subpoenas at the request of either the Commonwealth or the claimant....
>
> . . .
>
> Any person who refuses to obey such subpoena, or who refuses to be sworn to testify, or who fails to produce any papers books or documents touching upon the case in which he is subpoenaed, or who is guilty of any contempt after summoned to appear, may be punished for contempt of court.

Accordingly, since the Board of Claims may issue subpoenas, the Commonwealth Court reasoned that it could not issue a writ of prohibition preventing the Board from exercising its jurisdiction. The Commonwealth Court also denied a writ of mandamus, noting that such relief is inappropriate, "to control an official's discretion or judgment where that official is vested with a discretionary power." *Porter v. Bloomsburg State College,* 450 Pa. 375, 376–377, 301 A.2d 621, 622 (1973), *cert. denied,* 414 U.S. 844, 94 S.Ct. 105, 38 L.Ed.2d 82 (1973)(quoting *Garratt v. Philadelphia,* 387 Pa. 442, 448, 127 A.2d 738, 741 (1956)). Asserting that the Board's power to issue subpoenas is discretionary, and that the AOPC had no clear legal right to the relief, the Commonwealth Court denied the requested writ.

Furthermore, the Commonwealth Court emphasized that neither prohibition nor mandamus is available to a petitioner who fails to exhaust other available remedies. Relying on its decision in *Robertshaw Controls v. Human Relations Commission,* 67 Pa.Cmwlth. 613, 447 A.2d 1083 (1983), the Court noted that orders requiring compliance with a subpoena or refusing to quash a subpoena are interlocutory and unappealable. Accordingly, the Court held that rather than seeking prohibition or mandamus, AOPC had the alternate remedies of waiting until entry of final judgment to file an appeal as of right or to seek certification of an interlocutory appeal by permission, as set forth in Section 702(b) of the Judicial Code, which provides:

> (b) Interlocutory appeals by permission.—When a court or other government unit, in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate court, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in such order. The appellate court may thereupon, in its discretion, permit an appeal to be taken from such interlocutory order.

The Court recognized that because an appeal pursuant to Section 702(b) is by permission, it might not always provide a petitioner with adequate relief. However, because the AOPC did not seek certification of the Board's order, the Court concluded that it had failed to exhaust its statutory remedies, and therefore could not seek the extraordinary relief of prohibition or mandamus.

In determining that it could not issue a writ of mandamus or prohibition to the Board of Claims because the Board has jurisdiction to issue subpoenas, the Commonwealth Court ignored this Court's decision in *Glen Mills Schools v. Court of Common Pleas,* 513 Pa. 310, 520 A.2d 1379 (1987). In *Glen Mills,* the Court stated, "beyond the situation where the lower

court wholly lacks jurisdiction in a matter, a writ of prohibition is proper where the inferior tribunal abuses its jurisdiction." *Id.* at 315, 520 A.2d at 1381. It then noted a prior decision, *Capital Cities Media, Inc. v. Toole,* 506 Pa. 12, 483 A.2d 1339 (1984), which held:

> In addition to total absence of jurisdiction, our cases have extended the application of the writ of prohibition to encompass situations in which an inferior court, which has jurisdiction, exceeds its authority in adjudicating the case. This latter situation has been termed an 'abuse of discretion.' *Philadelphia Newspapers, Inc. v. Jerome,* 478 Pa. 484, 387 A.2d 425 (1978), *appeal dismissed,* 443 U.S. 913, 99 S.Ct. 3104, 61 L.Ed.2d 877 (1979); *Commonwealth v. Mullen,* 460 Pa. 336, 333 A.2d 755 (1975); *Commonwealth v. Smart,* 368 Pa. 630, 84 A.2d 782 (1951); *Schlesinger Petition,* 367 Pa. 476, 81 A.2d 316 (1951); *McNair's Petition,* 324 Pa. 48, 187 A. 498 (1936).

*Glen Mills,* 513 Pa. at 315, 520 A.2d at 1381. Because the issuance of a subpoena by the Board of Claims to the former Chief Justice raises significant issues of governmental privilege, the Commonwealth Court erred by denying mandamus or prohibition simply because the Board has jurisdiction to issue subpoenas generally. Accordingly, the Commonwealth Court had jurisdiction to inquire into whether the Board's action constituted an abuse of discretion.

■ Furthermore, we disagree with the Commonwealth Court's determination that AOPC is precluded from obtaining a writ of prohibition or mandamus because it did not seek immediate appeal of the Board's interlocutory order. Clearly, the order directing the deposition of the former Chief Justice is not a controlling question of law concerning Vartan's claim that AOPC breached its agreement. Accordingly, seeking certification would have been futile for the AOPC pursuant to Section 702(b) of the Judicial Code.

■ Because the Commonwealth Court had jurisdiction to consider the substantive issues raised in the Petition, and the AOPC did not fail to take advantage of available remedies, we hold that the Commonwealth Court erred by granting Vartan's Preliminary Objections and dismissing AOPC's Amended Petition for Review. In light of the fact that the Amended Petition raises only matters of law, and that the parties have thoroughly briefed and argued the issues, for reasons of judicial economy, we will address the substantive issues rather than remanding the matter to the Commonwealth Court.

## II.

■ AOPC asserts that the subpoena to former Chief Justice Nix should be quashed based on the deliberative process privilege. The deliberative process privilege permits the government to withhold documents containing "confidential deliberations of law or policymaking, reflecting opinions, recommendations or advice." *Redland Soccer Club, Inc. v. Department of the Army of the United States,* 55 F.3d 827, 853 (3d Cir.1995), citing *In re Grand Jury,* 821 F.2d 946, 959 (3d Cir.1987) (citing *NLRB v. Sears Roebuck & Co.,* 421 U.S. 132, 150–54, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975); *EPA v. Mink,* 410 U.S. 73, 89 & n. 16, 93 S.Ct. 827, 836–37 & n. 16, 35 L.Ed.2d 119 (1973)), *cert. denied sub. nom., Colafella v. United States,* 484 U.S. 1025, 108 S.Ct. 749, 98 L.Ed.2d 762, (1988). As the Third Circuit Court of Appeals noted in *Grant v. Shalala,* 989 F.2d 1332, 1334 (3 rd Cir.1993):

> It has long been recognized that attempts to probe the thought and decision making processes of judges and administrators are generally improper. In *United States v. Morgan,* 313 U.S. 409, 422, 61 S.Ct. 999, 1004–05, 85 L.Ed. 1429 (1941), the Supreme Court observed that questioning a judge or administrator about the process by which a decision had been reached would undermine the judicial or administrative pro-

cess. The Court wrote (id.): "Just as a judge cannot be subjected to such a scrutiny, so the integrity of the administrative process must be equally respected." *See also Citizens To Preserve Overton Park v. Volpe*, 401 U.S. 402, 420, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971); *Franklin Savings Ass'n v. Ryan*, 922 F.2d 209, 211 (4th Cir.1991); *NLRB v. Botany Worsted Mills*, 106 F.2d 263 (3d Cir.1939) (striking interrogatories probing the decision making process of NLRB members); 3 K. Davis, Administrative Law Treatise, § 17.7 (1980).

■■■ The deliberative process privilege benefits the public, and not the officials who assert the privilege. *Hamilton v. Verdow*, 287 Md. 544, 414 A.2d 914, 924 (1980) *citing, Kaiser Aluminum and Chemical Corp. v. United States*, 141 Ct. Cl. 38, 157 F.Supp. 939, 944 (1958). The purpose for the privilege is to allow the free exchange of ideas and information within government agencies. *See, e.g., N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975); *Schell v. United States Dept. of Health and Human Services*, 843 F.2d 933 (6th Cir.1988); *Times Mirror Co. v. Superior Court of Sacramento County*, 53 Cal.3d 1325, 283 Cal.Rptr. 893, 813 P.2d 240, 249 (1991); *Hamilton;* Project, *Developments in the Law of Privileged Communications*, 98 Harv. L.Rev. 1450, 1619 (1995). The privilege recognizes that if governmental agencies were "forced to operate in a fishbowl, the frank exchange of ideas and opinions would cease and the quality of administrative decisions would consequently suffer." *Redland Soccer Club Inc.*, 55 F.3d at 854, *citing First Eastern Corp. v. Mainwaring*, 21 F.3d 465, 468 (D.C.Cir. 1994).

The privilege is recognized by Exemption 5 of the Freedom of Information Act, 5 U.S.C. § 552(b), which states that the Act does not apply to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency...." The focus in an Exemption 5 case is "whether the disclosure of materials would expose an agency's decision making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Dudman Communications Corporation v. Department of the Air Force*, 815 F.2d 1565, 1568 (D.C.Cir.1987).

■■■ For the deliberative process privilege to apply, certain requirements must be met. *See generally*, Russell L. Weaver & James T.R. Jones, *The Deliberative Process Privilege*, 54 Mo.L.Rev. 279 (1989). First, the communication must have been made before the deliberative process was completed. *Senate of Puerto Rico v. United States Department of Justice*, 823 F.2d 574 (D.C.Cir.1987). Secondly, the communication must be deliberative in character. It must be "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." *Paisley v. C.I.A.*, 712 F.2d 686, 698–99 (D.C.Cir.1983), vacated in part on other grounds, 724 F.2d 201 (D.C.Cir.1984). Information that is purely factual, even if decision-makers used it in their deliberations is usually not protected. In *E.P.A. v. Mink*, 410 U.S. 73, 87–88, 93 S.Ct. 827, 836–37, 35 L.Ed.2d 119 (1973), the Court held, that absent "a claim that disclosure would jeopardize state secrets, memoranda consisting only of compiled factual material or purely factual material contained in deliberative memoranda and severable from its context would generally be available for discovery by private parties in litigation with the Government."

The Third Circuit Court of Appeals has held that the deliberative process privilege applies to the Justices of the Pennsylvania Supreme Court. In *Centifanti v. Nix*, 865 F.2d 1422 (3d Cir.1989), the Third Circuit Court of Appeals affirmed a decision of the United States District Court which held that a letter from the Chairman of the Disciplinary Board to the Justices of the Pennsylvania Supreme Court was privileged from discovery. The Court stated,

"The letter ... contains recommendations and deliberations regarding the development of rules and policy governing regulation of attorneys. Because it reflects the deliberative process of government policymakers, it is protected by the predecisional governmental privilege." *Id.* at 1432.

Various decisions of this Commonwealth's intermediate appellate courts have followed the United States Supreme Court's decision in *United States v. Morgan*, 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429 (1941) by holding that the deliberations of public officials are not subject to discovery. In *Commonwealth v. Pennsylvania Public Utility Commission*, 17 Pa. Cmwlth. 351, 331 A.2d 598 (1975), the Commonwealth Court held that PUC technical staff reports used to determine the appropriateness of utility tariff changes were not discoverable because they revealed the PUC's decision making process. The Commonwealth Court also followed *Morgan* in *Coder v. Commonwealth, State Board of Chiropractic Examiners*, 79 Pa. Cmwlth. 567, 471 A.2d 563 (1984), stating, "It is not the function of a court to probe the mental processes of administrators." *Id.* at 569. Accord, *Brady v. Commonwealth, State Board of Chiropractic Examiners*, 79 Pa.Cmwlth. 608, 471 A.2d 572 (1984).

Consistent with the goals and policies set forth in the above-cited cases, the Court recognizes the existence of a deliberative process privilege that protects confidential deliberations of law, or policymaking that reflect opinions, recommendations or advice.

 It is important to note that Article V, Section 10 of the Pennsylvania Constitution provides that the Supreme Court "exercise[s] general supervisory and administrative authority over all courts." Accordingly, the information that Vartan seeks to obtain from Former Chief Justice Nix about the decision to terminate the lease is directly related to this Court's constitutionally mandated responsibilities. Vartan asserts that the analysis to be applied to the deliberative process privilege is similar to the one applied when determining whether judges are immune from suit. In *Forrester v. White*, 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988), the United States Supreme Court reviewed a decision of the Court of Appeals for the Seventh Circuit, which affirmed the grant of summary judgment in favor of an Illinois state court judge who was sued by a court employee whom he had discharged. The judge had asserted that he was entitled to judicial immunity from civil suit. The Supreme Court reversed, noting:

> When applied to the paradigmatic judicial acts involved in resolving disputes between parties who have invoked the jurisdiction of a court, the doctrine of absolute immunity has not been particularly controversial. Difficulties have arisen primarily in attempting to draw the line between truly judicial acts, for which immunity is appropriate, and acts that simply happen to have been done by judges. Here, as in other contexts, immunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches.
>
> This Court has never undertaken to articulate a precise and general definition of the class of acts entitled to immunity. The decided cases, however, suggest an intelligible distinction between judicial acts and the administrative, legislative or executive functions that judges may on occasion be assigned to perform.

*Id.* at 427, 61 S.Ct. 999. Vartan asserts that like judicial immunity, the deliberative process privilege should not apply to the administrative decisions of the judiciary. We disagree based on the significant difference between the effect of the privilege and immunity at issue. When a civil action against a judicial officer is dismissed because of immunity, the plaintiff is precluded from seeking relief. However, where a party to an action successfully invokes the deliberative process privilege to protect a witness from being deposed, the effect is notably different. Rather

than leaving the plaintiff without a remedy, it simply restricts the discovery the plaintiff is able to seek based on a public policy consideration that high government officials should not be required to divulge the thought processes behind their decisions.

██ In light of this Court's constitutionally required duty to administer the courts, and in recognition of the public importance of an agreement to provide court house facilities, we hold that the deliberative process privilege may be invoked to prohibit disclosure of the deliberations of the members of the Court regarding the signing of a lease and its termination.

Federal courts have consistently held that high government officials should ordinarily not be required to give depositions. In *In re Office of the Inspector General, Railroad Retirement Board*, 933 F.2d 276, 278 (5th Cir.1991), the Fifth Circuit Court of Appeals reminded the district court that if it determined that Burlington Northern Railroad was entitled to discovery from the Office of the Inspector General,

It shall remain mindful of the requirement that exceptional circumstances must exist before the involuntary depositions of high agency officials are permitted. *EEOC v. K–Mart*, 694 F.2d [1055] 1067–68 [1982]. We agree with our D.C. Circuit colleagues that 'top executive department officials should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking actions.' *Simplex Time Recorder Co. v. Secretary of Labor*, 766 F.2d 575, 586 (D.C.Cir.1985) (citing *United States v. Morgan*, 313 U.S. 409, 422, 61 S.Ct. 999, 1004–05, 85 L.Ed. 1429 (1941)); cf. *Sweeney v. Bond*, 669 F.2d 542 (8th Cir.), cert. denied, 459 U.S. 878, 103 S.Ct. 174, 74 L.Ed.2d 143 (1982); *Kyle Eng'g Co. v. Kleppe*, 600 F.2d 226 (9th Cir.1979); *United States Bd. of Parole v. Merhige*, 487 F.2d 25 (4th Cir. 1973) cert. denied, 417 U.S. 918, 94 S.Ct. 2625, 41 L.Ed.2d 224 (1974).

Our review of the record in this matter shows that Vartan has failed to demonstrate a strong necessity to take the Former Chief Justice's deposition. We agree with AOPC that Vartan has not shown how the deposition is relevant to the only dispute in this matter, which is whether AOPC complied with Paragraph 4(b) of the Lease. Appellant's Brief at 18. Because the reasons for the Justices' decision to terminate the Lease will not resolve the ultimate issue in the case, Vartan has not established an extraordinary circumstance that overcomes the deliberative process privilege that AOPC has properly invoked. Accordingly, the Board of Claims erred in failing to quash the subpoena directed to Former Chief Justice Nix.

### Conclusion

For these reasons, we reverse the decision of the Commonwealth Court and remand this matter to the Board of Claims for proceedings consistent with this Opinion.

Chief Justice FLAHERTY and Justices ZAPPALA and CAPPY did not participate in the consideration or decision of this case.

Justices NIGRO and SAYLOR concur in the result only.