J-S07019-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| NATHAN ANDREW LYTLE | |
| Appellant | No. 1143 MDA 2016 |

Appeal from the Judgment of Sentence August 14, 2014
In the Court of Common Pleas of Lebanon County
Criminal Division at No(s): CP-38-CR-0000852-2013

BEFORE:  BOWES, J., LAZARUS, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.:                **FILED APRIL 07, 2017**

Nathan Andrew Lytle appeals from the judgment of sentence, entered in the Court of Common Pleas of Lebanon County, following his conviction of delivery of controlled substances,[1] criminal use of a communication facility,[2] criminal coercion,[3] making a false report to law enforcement,[4] tampering with physical evidence,[5] retaliation against a witness,[6] obstructing the

---

[1] 35 P.S. § 780-113(a)(30).

[2] 18 Pa.C.S. § 7512(a).

[3] 18 Pa.C.S. § 2906.

[4] 18 Pa.C.S. § 4906(a).

[5] 18 Pa.C.S. § 4910(2).

[6] 18 Pa.C.S. 4953(a).

administration of law,[7] and unsworn falsification to authorities.[8] Upon review, we affirm.

The trial court stated the salient facts of this matter as follows:

Nathan Lytle . . . planted drug evidence in a car belonging to his estranged wife in an effort to gain leverage over her in a custody battle. . . . [T]he Lebanon Colunty District Attorney's Office [thwarted Lytle's] effort to "frame" his wife. Ultimately, [Lytle] was charged with various crimes and was convicted of them.

. . .

Lytle and his [estranged wife ("Wife")] are the parents of [R.M.L.], who was three years old at the time of trial. After the couple's separation, a [conciliator] recommended that [they] divide physical custody of [R.M.L.] equally between them. A hearing was then scheduled . . . on February 14, 2012[,] to finally determine the issue of custody.

On February 5, 2012, [Lytle] met [Wife] at a doctor's office where [R.M.L.] had an appointment. [Wife] was to take the couple's son after the appointment. When all parties arrived at the doctor's office, [Lytle] immediately walked out, stating that he had to make a phone call. After [R.M.L.'s] appointment, [Wife] left the doctor's office and found Officer Gregory Luft[, of the North Londonderry Police Department,] standing near her car, along with another officer.

After asking for [Wife's] permission to search her car, the officers found a small plastic baggy containing smaller plastic baggies with multiple blue pills, several bags of white pills, and two bags of a white powdery substance, in addition to [] green leafy items and a bottle of beer[.] The items were subsequently tested at the Pennsylvania State Police Crime Laboratory, which confirmed that the green leafy items were marijuana, the blue pills were alprazolam, and the white pills were oxycodone. Upon

_____

[7] 18 Pa.C.S. § 5101.

[8] 18 Pa.C.S. § 4904(a)(1).

finding these drugs, the officers arrested [Wife]; she was subsequently charged with felony drug offenses.

Later, [Wife] exchanged a series of text messages with [Lytle,] in which she asked him who had planted drugs in her car. In response, he offered to exchange a name for sex. [Wife] reported this information to the police, who subsequently fitted her with a hidden recording device. In a conversation recorded on this device, [Lytle] implicitly admitted that he had placed the drugs in [Wife's] car. In response to [Wife's] inquiry as to why he placed the drugs, [Lytle] said he did not know and would go back and change it if he could.

On or about May 3, 2013, [Lytle] was charged with [the aforementioned offenses]. In preparation for trial, [Lytle] filed a [m]otion to [o]btain [m]ental [h]ealth [r]ecords of [Wife]. In an order entered on May 14, 2014, we denied [Lytle's] request, citing the psychotherapist-patient privilege. A few days later, [Lytle] subpoenaed [Loreen Burkett, Esquire, the custody concilator,] along with notes and documents from the conciliation conference that took place on [February 14, 2012]. [Attorney] Burkett filed a [m]otion to [q]uash the [s]ubpoena[, which was granted based upon Lebanon County Local Rule of Civil Procedure 1915.4-3.]

Trial Court Opinion, 12/15/14, at 2-4 (footnote omitted).

After a jury trial on June 4, 2014, Lytle was convicted of the above offenses. Lytle was sentenced on August 14, 2014, to an aggregate term of six-and-one-half to 15 years' imprisonment. This timely appeal followed,[9] in which Lytle raises the following issues for our review:

_____

[9] Lytle filed an initial appeal to the Superior Court from his judgment of sentence on September 12, 2014; however, Lytle was abandoned by counsel. Thereafter, he filed a PCRA petition, which ultimately resulted in the reinstatement of his direct appeal rights by the trial court. *See* Order, 6/30/16.

1. Did the trial court abuse its discretion when it quashed the subpoena of Loreen Burkett, Esq., prohibiting Mr. Lytle from presenting evidence that his ex-wife lied to the [c]ourt?

2. Did the trial court abuse its discretion when it denied Mr. Lytle's motion to access his ex-wife's mental health records?

3. Did the trial court abuse its discretion in finding sufficient evidence for conviction?

4. Did the trial court abuse its discretion in finding guilt against the weight of the evidence?

Brief for Appellant, at 2.

Lytle notes upfront that he "constructed his case around the concept of using impeachment evidence, specifically from the custody conciliator and his estranged wife's mental health records, to establish reasonable doubt of his guilt in the minds of the jury[,]" arguing that "without direct authority, [the trial court] quashed the subpoena to Attorney Burkett and denied access mental health records." Brief for Appellant, at 3-4.

In this matter, Attorney Burkett's subpoena was quashed pursuant to Lebanon County Local Rule of Civil Procedure 1915.4-3, which provides in subsection (F) that the conciliator in a custody case "shall not be a witness at any subsequent proceeding." Leb. Cty. R.C.P. 1915.4-3(F). The rule states the rationale that in order

> [t]o facilitate the mediation process and encourage frank, open and meaningful exchanges between the parties and their respective counsel, any statements made by the parties, or their witnesses, shall not be admissible as evidence in Court and no record shall be made of the proceedings.

*Id.* This rule effectively provides the conciliator with "deliberative process privilege" based upon his or her role in the custody dispute.

- 4 -

Deliberative process privilege "permits the government to withhold documents containing confidential deliberations of law or policymaking, reflecting opinions, recommendations or advice." ***Commonwealth v. Vartan***, 733 A.2d 1258, 1263 (Pa. 1999) (citation omitted). For the privilege to apply, certain criteria must be met. ***Id.*** at 1264 (protected communication must have been made before deliberative process was complete and must be deliberative in character).

Instantly, Attorney Burkett was functioning in a quasi-judicial capacity. ***See Logan v. Lillie***, 728 A.2d 997, 998 (Pa. Cmwlth. 1999) (holding duly-appointed Domestic Relations Officer acts in quasi-judicial role when acting pursuant to Pa.R.C.P. 1915.4-2). Our Court has noted with approval the notion that quasi-judicial decision-makers are not permitted to be examined regarding the "thought processes underlying their decisions." ***Leber v. Stretton***, 928 A.2d 262, 269 (Pa. Super. 2007) (quoting ***Hoeft v. MVL Group, Inc.***, 343 F.3d 57, 67 (2d Cir. 2003)). Moreover, in this particular matter, the local rule of civil procedure speaks to the issue and precludes the conciliator from testifying. Accordingly, the concept of deliberative process privilege applies in the instant matter and prevents Attorney Burkett from being required to be subpoenaed due to her quasi-judicial role as a conciliator.

Lytle also argues that his right to confront witnesses outweighs the deliberative process privilege as well as the privilege in place between

- 5 -

psychiatrists and their patients. In Pennsylvania, psychiatrist-patient privilege is codified as follows:

> No psychiatrist or person who has been licensed . . . to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client.

42 Pa.C.S. § 5944. We note that, to extent the Attorney Burkett was a witness in this matter, "the statutory privilege pursuant to [s]ection 5944 is not outweighed by [Lytle's] right to cross-examine witnesses or his due process rights." *Commonwealth v. Henkel*, 90 A.3d 16, 31 (Pa. Super. 2014). Moreover, Lytle was able to question and cross-examine Wife, including attempts to impeach her credibility. Additionally, during this appeal, Lytle has not identified the specific impeachment evidence that would be produced through cross-examining Attorney Burkett. For these reasons, we find Lytle's arguments regarding his right to overcome the privileges in place to protect quasi-judicial activities and psychiatrist-patient relationships to be without merit.

Next, we turn to Lytle's sufficiency and weight of the evidence claims. In considering sufficiency of the evidence claims,

> we must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. . . . Where there is sufficient evidence to enable the trier of fact to find

every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail. Of course, the evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part or none of the evidence presented.

**Commonwealth v. Watley**, 81 A.3d 108, 113 (Pa. Super. 2013) (en banc).

The Commonwealth can satisfy its burden via wholly circumstantial evidence. **Id.** As to weight of the evidence, such challenges concede the sufficiency of the evidence but assert that "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." **Commonwealth v. Widmer**, 744 A.2d 745, 751-52 (Pa. 2000) (citation omitted).

In this matter, Lytle's claims of sufficiency and weight of the evidence are predicated upon his argument that because they did not present "a full case inclusive of all the facts available." Brief for Appellant, at 10. Lytle asserts that the evidence was insufficient or not weighty enough since the court denied him the opportunity to impeach Wife via the use of her mental health records and the testimony of the conciliation officer. These claims are meritless, since the court did not err in prohibiting the introduction of Wife's mental health records into evidence or in quashing Attorney Burkett's subpoena. Moreover, both claims are undeveloped, since neither the sufficiency nor the weight of the evidence claim provides any specificity as to how the Commonwealth failed to prove an element of any crime or demonstrate the injustice of Lytle's convictions. **Watley**, **supra**; **Widmer**, **supra**.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/7/2017