Jeff LEBER, Appellee

v.

Samuel STRETTON, Appeal of Magisterial DJ Annette Easton & Magisterial DJ Barbara Easton, Appellants.

Jeff Leber, Appellee

v.

Potter Leader Enterprise, Tioga Publishing Co., Inc., Community Media Group, and Paulalee a/k/a Paulalee Aldridge, Appeal of Magisterial DJ Annette Easton & Magisterial DJ Barbara Easton, Appellants.

Superior Court of Pennsylvania.

Argued May 1, 2007.

Filed June 8, 2007.

Reargument Denied Aug. 20, 2007.

A. Taylor Williams, Philadelphia, for appellants.

Jefferey E. Leber, Coudersport, for Leber, appellee.

BEFORE: STEVENS, KLEIN, and PANELLA, JJ.

OPINION BY STEVENS, J.:

¶ 1 Appellants Magisterial District Judge Annette Easton (hereinafter "Judge A.E.") and Magisterial District Judge Barbara Easton (hereinafter "Judge B.E.") (hereinafter collectively "Appellants") [1] appeal from collateral orders entered on June 13, 2006, and July 5, 2006, in the Court of Common Pleas of Tioga County denying their motions to quash subpoenas and for protective orders. Upon careful review, we reverse.

¶ 2 Appellee served as District Attorney of Potter County for twenty (20) years and in that capacity criticized Appellants for their judicial practices and decisions. This matter arises out of Appellee's filing of two defamation suits, one against Samuel Stretton [2] and the other against *Potter Leader Enterprise, et. al.* [3] In the former case, Appellee alleges Attorney Stretton, a lawyer who represented Appellants in charges filed with the Judicial Conduct Board, defamed him by stating he was unethical because of statements Appellee had publicly made concerning Appellants.[4] Appellee claims *Potter Leader Enterprise,*

1. Appellants are former sisters-in-law.

2. Docketed at 609 CV 2004.

3. Docketed at 556 CV 2003.

4. Appellee asserts the defamatory statements published by Attorney Stretton are as follows:
   a. Attacked the "local judiciary."
   b. Failed to perform his legal "obligation to defend a judge."
   c. Committed "a grave injustice to the system and to justice in general."
   d. Orchestrated a campaign discrediting two district justices.
   e. Engaged in "unconscionable" behavior "to try and intimidate these District Justices with words that are less than fair and impartial."
   f. Unfairly made accusations against a judge.
   g. Violated "his ethical responsibility under the Code of Conduct."
   h. Made false statements that undermine the legal system.

*et. al.* defamed him by printing those statements. Several articles appeared in the press, during which time Attorney Stretton served as counsel for Appellants.

¶ 3 During an argument held on January 11, 2005, Appellee stated that the genesis of the statements leading to the instant appeal arose in the case of *Commonwealth v. Ryan Butler,* where Judge A.E. initially determined a *prima facie* case had not been set forth and dismissed the charges, after which Judge B.E. was appointed to hear the case, and similarly dismissed it.[5]

¶ 4 In No. 609 CV 2004, Appellee served Appellants with a Subpoena to Attend and Testify on May 15, 2005.[6] Appellants filed a Motion to Quash Subpoenas and for Protective Order on May 30, 2006. The trial court denied both Motions to Quash on June 13, 2006.

¶ 5 Appellants filed a timely appeal under Pa.R.A.P. 313 on June 19, 2006. On June 28, 2006, the trial court ordered Appellants to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellants filed a timely Statement of Matters Complained of on Appeal on July 11, 2006.

¶ 6 In No. 566 CV 2003, Appellee alleges that, *inter alia,* the *Potter Leader Enterprise* published statements made by Attorney Stretton that were false or with reckless indifference to their truth or falsity.

*See* Complaint, 11/17/04 at ¶ 17. Appellants filed a Motion to Quash Subpoenas and for Protective Order on June 29, 2006, in response to their receipt of Subpoena to Attend and Testify and Notice of Deposition on June 14, 2006, and June 19, 2006. On July 5, 2006, the trial court denied Appellants' Motion to Quash Subpoena. On July 11, 2006, Appellants filed a timely Notice of Appeal.

¶ 7 On July 31, 2006, the trial court ordered Appellants to file a Concise Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925(b). Appellants filed the same on August 7, 2006.

¶ 8 In its Memorandum and Order in Support of Order in Compliance with Rule 1925(a) of the Rules of Appellate Procedure, the trial court determined, *inter alia,* that: "[Appellants] are not being compelled to testify regarding their official acts in a prior hearing or trial. Rather, [Appellants] are being asked to testify regarding facts they allegedly have knowledge of concerning the statements made by [Appellee]." Opinion, 9/8/06, at 5. The court goes on to state that "[a]s to the argument of the press of business, if a District Judge can have a subpoena quashed on these grounds, then all doctors, business professionals, CEO's, CFO's, Presidents of College, and others could use these same grounds to become exempt from depositions." Opinion, 9/8/06, at 6.[7]

---

i.  Violated an attorney's professional Code of Conduct.
j.  Acted unethically.
k.  Made unwarranted accusations not based on reality.
l.  Failed to meet his obligation to "not undermine a system he has worked in his entire life."
See Complaint, 9/20/04 at ¶ 6.

5.  Appellee represented that after he appealed Judge B.E.'s decision, a third district judge from Clinton County was appointed who heard the preliminary hearing and bound the case over to court after which the defendant

thereafter pled guilty to the charges. N.T., 1/11/05, at 45. Appellee stated that "they key issue is the undisclosed facts." N.T., 1/11/05, at 47.

6.  A Notice of Deposition sent to Judge B.E. was filed on May 4, 2006. Also on that date, a subpoena was filed for Judge A.E.

7.  For the reasons we shall discuss, *infra,* we find an analogy comparing a judicial officer to other professionals with regard to testifying concerning the thought processes in which he or she engages on the job to be in error. It is

¶ 9 In their brief, Appellants raise the following issues for our consideration:

1. Whether the denial of [Appellants'] Motion to Quash Subpoenas, asserting privilege, is immediately appealable under Pa.R.A.P. 313?

2. Whether the deliberative process of a judicial officer in deciding specific cases may be inquired into on oral deposition?

a. Whether a judicial officer should be forced to give a deposition to be impugned or harassed for his/her judicial decisions?

3. Whether the exclusive jurisdiction over judicial conduct vested in the Judicial Conduct Board and the Court of Judicial Discipline may be circumvented in order to "prove" sitting judicial officers incompetent and biased in a defamation case involving other parties?

4. Whether a judicial officer should be compelled to testify, and be diverted from necessary judicial responsibilities, absent a showing of extreme or extraordinary circumstances?

a. Whether, when the deposition of a judge meets the extreme or extraordinary circumstances standard, the deposition of a judicial officer should be accomplished in the least intrusive manner, as by deposition on written interrogatory?

Brief for Appellant at 4.[8]

■ ¶ 10 In its Memorandum and Order in Support of Order in Compliance with Rule 1925(a) of the Rules of Appellate Procedure, the trial court asserts it is for this Court to decide whether Appellants' claim its denial of Appellants' Motion to Quash Subpoenas, asserting privilege, is immediately appealable under Pa.R.A.P. 313. Trial Court Memorandum at 2.[9]

■ ¶ 11 Generally, discovery orders are deemed interlocutory and not immediately appealable because they do not dispose of the litigation. *Makarov v. Lukenda*, 856 A.2d 163 (Pa.Super.2004). A non-final order may be reviewed if it is separable from and collateral to the main cause of action, the right involved its too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost. Pa.R.A.P. 313(b). All three factors set forth in Rule 313 must be satisfied. *Pace v. Thomas Jefferson University Hospital*, 717 A.2d 539 (Pa.Super.1998). The Pennsylvania Supreme Court has stated that Rule 313 must be construed narrowly: "Claims must be analyzed not with respect to the specific facts of the case, but in the context of the broad public policy interests that they implicate. Only those claims that involve interests 'deeply rooted in public policy' can be considered too important to be denied review." *Geniviva v. Frisk*, 555 Pa. 589, 598, 725 A.2d 1209, 1214 (1999).

¶ 12 In the case at bar, the underlying actions involve defamation claims that arose from public comments regarding the competence and objectivity of Appellants, and Appellants contend Appellee seeks to depose them regarding specific judicial decisions. The question of whether Appellants can be compelled to testify regarding decisions they have rendered would not require an analysis of underlying defama-

well settled that the role of a judicial officer entitles him or her to certain protections from testifying in matters pertaining to his or her occupation to which members of other professions are not entitled.

8. For ease of discussion, we will consider issues two (2), three (3), and four (4) together.

9. Appellee concurs with Appellants' position that this issue should be reviewed and decided at this juncture. Brief for Appellee at 6.

tion claims. *See Ben v. Schwartz*, 556 Pa. 475, 729 A.2d 547 (1999) (regarding separability prong of Rule 313). Furthermore, the deliberative process privilege has been determined to meet the importance prong of Rule 313. *See Hoffman v. Knight*, 823 A.2d 202 (Pa.Super.2003). (deliberative process privilege is separable from underlying cause of action for legal malpractice and breach of contract). In addition, the collateral order exception uniformly has been applied when an appellant has asserted the existence of a privilege. *Commonwealth v. Alston*, 864 A.2d 539, 544 (Pa.Super.2004). Moreover, once disclosed, the confidentiality of potentially privileged information would be irreparably lost and there would be no effective means of review after final judgment. *See Crum v. Bridgestone/Firestone North American Tire, LLC*, 907 A.2d 578 (Pa.Super.2006). Herein, we find that the question of whether a judicial officer can be compelled to testify does not require an analysis of underlying defamation claims. As such, we find the Orders entered on June 13, 2006, and July 5, 2006, are appealable and properly before us.

¶ 13 Appellants' remaining issues, in sum, question whether the deliberative process of a judicial officer may be inquired into during an oral deposition, which will take time away from his or her judicial responsibilities and circumvent the exclusive jurisdiction over judicial conduct vested in the Judicial Conduct Board, absent a showing of extreme or extraordinary circumstances. Appellants contend that Appellee seeks to request information concerning underlying cases in which Appellants sat as officers while Appellee functioned as District Attorney, to prove Appellants acted with bias or incompetence. Brief for Appellant at 7.[10] In his brief, Appellee states that he has no intention of inquiring into either privileged communications between Appellants and their attorney or into their decision making process "other than to inquire of the facts upon which those decisions are based." Brief for Appellee at 3. Nevertheless, in setting forth a possible questioning scenario Appellee says would establish "the facts of the Potter County situation in which [ ] Appellee did criticize [Appellants] in his pleadings seeking the appointment of different District Justices," Appellee indicates that an affirmative answer to each question would likely lead to the following, final query: "Why did you decide there was no *prima facie* case?" Brief for Appellee at 9–10 (emphasis in original). Appellee asserts the question is legitimate and relevant, but admits that such question may delve into the Judge's thought processes to which Appellants object. Brief for Appellant at 10.

¶ 14 Typically, the standard of review regarding a motion to quash a subpoena is whether the trial court abused its discretion. *Slusaw v. Hoffman*, 861 A.2d 269, 272 (Pa.Super.2004). However, as the questions raised herein are purely questions of law, this Court's standard of review is *de novo*, and its scope of review is plenary. *Buffalo Tp. v. Jones*, 571 Pa. 637, 644 n. 2, 813 A.2d 659, 664 n. 2 (2002) (citations omitted).

---

**10.** Appellants signed Affidavits in an effort to show that complaints were filed with the Judicial Conduct Board at the time of the alleged defamation. In the complaints, allegations were set forth claiming Appellants exhibited bias against law enforcement officers and the District Attorney's Office and questioning Appellants' competence to perform judicial duties. The Judicial Conduct Board dismissed these complaints via a letter to each Appellant both of which stated that, *inter alia*, pursuant to Article V, § 18(a)(8) of the Pennsylvania Constitution, the complaints had been dismissed and the files closed. *See* Affidavit of Judge A.E., 6/27/06, at 1–2; Affidavit of Judge B.E., 6/27/06 at 1–2.

¶ 15 Appellants have not cited, nor has our research uncovered, a case in the Commonwealth that addresses a situation in which the plaintiff in a defamation case challenged the truthfulness of statements made by the defendant where the subject matter of the alleged defamation had been judicial conduct. As such, we analyze decisions from other jurisdictions which have considered an analogous issue.

¶ 16 Before considering Appellants' assertion they are entitled to protections afforded to judicial officers, a brief discussion of the role of the district justice in this Commonwealth's judicial system is in order.

¶ 17 It is well settled that a district justice is a judge. As long ago as 1909, our Supreme Court unequivocally asserted that:

> This appellant [district justice] was as much a judge, though in a limited sphere, as the judicial officer [a Common Pleas Court judge] by whose decree the appellees would have him removed from office.

*Bowman's Case*, 225 Pa. 364, 368, 74 A. 203, 204 (1909).

¶ 18 The term "judge" has been defined to include a description of the duties performed by district justices. *See, e.g.* "**judge,** *n.* A public official appointed or elected to hear and decide legal matters in court. The term is sometimes held to include all officers appointed to decide litigated questions, including a justice of the peace...." A subsection of this definition includes the term "*district judge.* 1. A judge in a federal or state judicial district." BLACK'S LAW DICTIONARY 857 (8th ed.2004). Additionally, district justices are referred to as judges in various legislative pronouncements. *See, e.g.*, the definition of judicial officer in the Judicial Code, 42 Pa.C.S.A. § 102, which includes district justices. Also, Section 103 of the Pennsyl-vania Crimes Code, 18 Pa.C.S.A. § 103, defines the term "judge" to include a magisterial district judge in the exercise of his or her criminal or quasi-criminal jurisdiction, and magisterial district justices are a part of the Unified Judicial System of this Commonwealth. 42 Pa.C.S.A. § 301. In light of the aforementioned discussion, Appellees are judicial officers and entitled to receive the protections afforded such individuals.

¶ 19 A century ago, the United States Supreme Court declared it "wholly improper" to subject decision makers to the rigors of an "elaborate cross-examination with regard to the operation of their minds." *Chicago, Burlington, & Quincy Railway. Co. v. Babcock*, 204 U.S. 585, 593, 27 S.Ct. 326, 51 L.Ed. 636 (1907). Therein, the Court declared:

> Jurymen cannot be called, even on a motion for a new trial in the same case, to testify to the motives and influences that led to their verdict.... Similar reasoning was applied to a judge.... All the often-repeated reasons for the rule as to jurymen apply with redoubled force to the attempt, by exhibiting on cross-examination the confusion of the members' minds, to attack in another proceeding the judgment of a lay tribunal, which is intended, so far as may be, to be final, notwithstanding mistakes of fact or law."

*Id.* (citations omitted).

¶ 20 A few decades later, the United States Supreme Court created a concept known as "the deliberative process privilege." *See United States v. Morgan*, 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429 (1941). Therein, an action was brought against the United States and the Secretary of Agriculture. The Court noted that a deposition of the Secretary resembled a judicial proceeding and proclaimed that

"an examination of a judge would be destructive of judicial responsibility." *Id.* 313 U.S. at 422, 61 S.Ct. 999. The Court concluded that "[j]ust as a judge cannot be subjected to such a scrutiny, so the integrity of the administrative process must be equally respected." *Id.*

¶ 21 Since *Morgan,* a number of jurisdictions, including the Third Circuit, have utilized the rationale of that case to prohibit judges from testifying under oath. In a case brought against the Secretary of the U.S. Department of Health and Human Services, a plaintiff who had been denied social security benefits claimed the administrative law judge was biased against claimants. Rejecting the plaintiff's attempt to "probe the mind of" the Administrative Law Judge, the Third Circuit Court of Appeals stated: "It has long been recognized that attempts to probe the thought and decision making processes of judges and administrators are generally improper." *Grant v. Shalala,* 989 F.2d 1332, 1344 (3rd Cir.1993); *Accord, Commonwealth v. Vartan,* 557 Pa. 390, 733 A.2d 1258 (Pa.1999) (plurality opinion) (citing jurisdictions endorsing a deliberative process privilege).

¶ 22 Herein, both parties cite to *Vartan* in support of their respective positions in their briefs. In that case, a contractor brought an action against the Commonwealth to recover from the Administrative Office of Pennsylvania Courts' (AOPC) claim for breach of contract for construction and lease of courthouse. Our Supreme Court determined that the deliberative process privilege protected deliberations by its members about a lease for construction of a building for the Commonwealth Court and lease termination, and it barred a landlord from deposing the Chief Justice about the decision to terminate the lease. The Court stated that the deliberative process privi-

lege benefits the public, and not the officials who assert that privilege and noted that "[t]he privilege recognizes that if governmental agencies were 'forced to operate in a fishbowl, the frank exchange of ideas and opinions would cease and the quality of administrative decisions would consequently suffer.' " *Id.* 557 Pa. at 400, 733 A.2d at 1264 (citations omitted).

¶ 23 The *Vartan* Court explained that:

For the deliberative process privilege to apply, certain requirements must be met. First, the communication must have been made before the deliberative process was completed. Secondly, the communication must be deliberative in character. It must be 'a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal policy matters.' Information that is purely factual, even if decisionmakers used it in their deliberations[,] is usually not protected.

*Id.* 557 Pa. at 401, 733 A.2d at 1264 (citations omitted). The Court concluded that "[c]onsistent with the goals and policies set forth in the above-cited cases, the Court recognizes the existence of a deliberative process privilege that protects confidential deliberations of law, or policymaking that reflect opinions, recommendations or advice." *Id.* 557 Pa. at 402, 733 A.2d at 1265. However, more recently, our Supreme Court noted it has not definitively adopted the deliberative process privilege, and cited to *Vartan,* 557 Pa. at 402, 733 A.2d at 1265, as reflecting the view of a plurality of the Court that the privilege should be adopted, though it found it was beyond the scope of the matter before it to do so. *Tribune–Review Pub. Co. v. Department of Community and Economic Development,* 580 Pa. 80, 93, 859 A.2d 1261, 1269 (2004).

¶ 24 In a case from the 2nd Circuit, the court described the crux of the parties'

dispute as the district court's allowing an arbitrator to be examined regarding his alleged manifest disregard of the law. The court noted that "while arbitrators may be deposed regarding claims of bias or prejudice, cases are legion in which courts have refused to permit parties to depose arbitrators-or other judicial or quasi-judicial decision-makers regarding the thought processes underlying their decisions." *Hoeft v. MVL Group, Inc.*, 343 F.3d 57, 67 (2nd Cir.2003).

¶ 25 In *State ex rel. Kaufman v. Zakaib*, 207 W.Va. 662, 670, 535 S.E.2d 727, 735 (W.Va.2000), the Supreme Court of Appeals of West Virginia held that judicial officers may not be compelled to testify concerning the mental processes they employed in formulating their official judgments or the reasons that motivated them in their official acts. The court recognized that "this protection from discovery proceedings has its limits, and those limits are that a judge must be acting as a judge, and that it is information regarding his or her role as a judge that is sought." *Id.* The court distinguished this situation from those instances in which people who are judges by vocation may witness events that are material to a given case and utilized the example of a judge who witnesses a car accident while on her way to work or may be involved in one herself. Under such circumstances, the court declared that these should be considered acts simply done by judges, for which immunity is not appropriate. *Id.* 207 W.Va. at 671, 535 S.E.2d at 736.

¶ 26 Herein, Appellee asserts in his brief that his "objective is to prove that he has been defamed." Brief for Appellee at 3. While Appellee denies that the Potter County case of *Commonwealth v. Ryan Butler* would be the focus of Appellants'

depositions, he states that "the sequence of events including the publication of the article branding [ ] Appellee as 'unethical' would suggest that case is the focus of the 'unethical' allegation along with the complaints to the Judicial [C]onduct Board." Brief for Appellant at 8. Furthermore, the scenario of questions he presents concerning that case suggests that Appellee, indeed, intends to focus upon this matter while deposing Appellants, though, clearly, he is aware of the factual situation surrounding the incident.[11] As was discussed, *supra*, Appellee presented on January 11, 2006, that "the genesis of this was in this case of *Commonwealth v. Butler* where [Judge A.E.] threw this case out. I was there, and frankly, Your Honor, after 30 years as an attorney and 20 years as a District Attorney, I sure know what a *prima facie* case is." N.T., 1/11/06, at 45. As such, it is disingenuous for Appellee to suggest he will concentrate his questions entirely upon facts, or that the *Butler* case will not be the focus of these questions.

¶ 27 Additionally, Appellee indicates in his brief and references an article which was published in the *Potter Leader Enterprise* in support of his claim Pennsylvania State Troopers are aware of an alleged "s—— list" Judge A.E. keeps and the fact that she refers to Appellee as "The Evil One." *See* Brief for Appellee at 11; Exhibit "CC." Therefore, as Appellee declares he "is not interested in [Appellants'] opinion," the facts about which Appellee claims he wishes to question Appellants are obtainable from the State Troopers who were allegedly present when Judge A.E. made them. Brief for Appellant at 13. Thus, Appellants are not the sole source of the information Appellee wishes to obtain to prevail in his defamation lawsuits.

---

11. In fact, Appellee was admittedly present during that proceeding and provides a detailed description of its procedural history in his brief. Brief for Appellant at 7–8.

¶ 28 Even if Appellants were the sole source of the information, we find the aforementioned caselaw persuasive and determine that Appellee's desire to question Appellants regarding events which occurred in the course of their judicial duty not only will take time away from their role as district judges but also necessitates delving into the thought processes they utilized in those positions. As a matter of public policy, we find this type of questioning unacceptable and hold that judicial officers are immune from testifying as to information surrounding their conduct during an official proceeding.

¶ 29 In short, a judicial officer may not be compelled to testify, and his or her deliberative process may not be inquired into, when a plaintiff in a defamation case challenges the truthfulness of statements made by a defendant where the subject matter of the alleged defamation had been judicial conduct.[12] As a result, we reverse the trial court's orders entered on June 13, 2006, and July 5, 2006.

¶ 30 Orders Reversed; Case Remanded; Jurisdiction Relinquished.

¶ 31 KLEIN, J., files a Concurring Statement.

## CONCURRING STATEMENT BY KLEIN, J.:

¶ 1 I fully join in the thorough and cogent opinion of my distinguished colleague. I agree that (a) one may not probe into the deliberative process of a judge; (b) a magisterial district judge is a "judge" for these purposes; and (c) judges should be treated differently and not subject to broad subpoenas for testimony regarding cases over which they presided and that could relate to the deliberative process.

¶ 2 I write separately to note that there are other avenues available to get the information sought by Appellee, and this opinion does not necessarily preclude using them. It is true that proceedings before a magisterial district judge are not generally recorded, and it may be appropriate to ask what was testified to at such a proceeding. Likewise, it may be appropriate to ask if there is a special list of officers not believed by the judge. However, these questions and others are best asked by written interrogatories without subjecting the judge to a full-range deposition that could intrude on the protection for the deliberative process. Objections to the questions could be raised in writing and then decided in a reasonable manner. That is far preferable to "on the spot" objections during an oral deposition.

---

12. We distinguish such a situation from an instance where the testimony of a judicial officer is sought regarding a matter in which he or she merely happened to witness or was personally involved in a circumstance that later becomes the focus of a legal proceeding, and this matter does not involve his or her judicial decision-making. In this scenario, such testimony would not implicate the judicial officer's thought processes in his or her professional capacity.