J-A09040-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| JACQUELINE C. RUPERT | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| THOMAS W. KING, III, ESQUIRE | : | No. 1309 WDA 2017 |
| AND DILLON MCCANDLESS KING | : | |
| COULTER & GRAHAM, LLP | : | |

Appeal from the Order August 15, 2017
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  G.D. 12-007664

BEFORE:  BOWES, J., DUBOW, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:                          FILED JUNE 4, 2018

Jacqueline C. Rupert (Appellant) appeals from the order granting full summary judgment in favor of Thomas W. King, III, Esquire and Dillon McCandless King Coulter & Graham, LLP (Dillon McCandless) in this legal malpractice action.  We reverse and remand.  Furthermore, we deny Attorney King's motion to strike references in Appellant's brief to expert reports, as well as Attorney King's motion to vacate this Court's order of January 11, 2018, which allowed non-parties Douglas G. Linn, Esquire and The Linn Law Group to intervene in this appeal.

As this appeal concerns the parties' competing narratives of facts, we

first set forth the undisputed facts.[1]  Appellant and Michael T. Rupert (Michael) were married in 2002 and had an ante-nuptial agreement.  On May 27, 2010, Michael was in an automobile accident and suffered serious injuries, including amputation of both his legs and one arm, burns over a substantial part of his body, blindness in one eye, and the loss of his penis.  The owner of the vehicle that struck him was Brayman Construction, Inc. (Brayman), and the driver was Brayman's employee, Stephen Macon (Macon).

On June 1, 2010, while Michael was in a coma, Appellant met with Attorney King, an attorney at Dillon McCandless.  That same day, Attorney King filed a successful petition in the Orphans' Court of Butler County to appoint Appellant as emergency guardian of Michael.  Also on June 1st, Appellant signed a contingent fee agreement with Dillon McCandless, both in

_____

[1] As we write primarily for the trial court and the parties, we do not repeat all of the extensive factual and procedural history of this case.  We note, however, that the underlying dispute between the parties has generated two additional actions in the Courts of Common Pleas, and this Court has issued three decisions: Dillon McCandless King Coulter & Graham, LLP v. Rupert, 81 A.3d 912 (Pa. Super. 2013) (Attorney King sought declaration in Butler County that the parties' amended fee agreement is valid and enforceable); Dillon McCandless King Coulter & Graham, LLP v. Rupert, 1648 WDA 2015 (unpublished memorandum) (Pa. Super. Apr. 20, 2017) (same); Rupert v. King, 1181 WDA 2014 (unpublished memorandum) (Pa. Super. Aug. 21, 2015) (Appellant sued Attorney King and his attorney for abuse of process).  This Court has observed, "[I]t is apparent from the tone and substance of both parties' briefs that significant animosity exists, not only between the parties, but also between their counsel."  Dillon McCandless King Coulter & Graham, LLP v. Rupert, 1648 WDA 2015 at 3.

her individual capacity and as guardian for Michael, for Attorney King to represent Michael and Appellant in claims arising from the accident.[2] The Original Agreement provided that Dillon McCandless would receive 33 1/3% of any settlement, verdict, or recovery obtained by Michael and Appellant, and that litigation costs incurred by Dillon McCandless would be deducted from the recovery. After Michael woke from the coma, he filed a petition to remove Appellant's guardianship; this petition was granted on October 29, 2010. Around the same time, Appellant and Attorney King discussed a potential loss of consortium claim for Appellant. Appellant asked Attorney King to research the value of her potential claim, and Attorney King engaged a company called Verdict Search, which prepared a report on loss of consortium verdicts in Pennsylvania.

On November 4, 2010, Appellant, Michael, and Attorney King executed an amended contingent fee agreement (Amended Fee Agreement), which reduced the contingency fee to 30% of any recovery, and provided that Dillon McCandless would be responsible for litigation costs. The Amended Fee Agreement also stated that Appellant would take 3 1/3% of any recovery as compensation for her loss of consortium claim, that Michael's share of any recovery would be 66 2/3%, and that these funds "shall be the sole and

_____

[2] In addition to Brayman and Macon, Michael and Appellant identified two additional parties who could be liable: Ford, the manufacturer of Michael's F-150 truck, which had caught on fire in the accident; and another driver who struck Michael's truck after Macon struck it.

- 3 -

independent property of each of them." Amendment to Contingent Fee Agreement, 11/4/10, at 1.

On December 7, 2010, without having commenced any action in court, Michael and Appellant proceeded to mediation with Brayman. On that day, Brayman agreed to settle and pay $19,000,000. Pursuant to the terms of the Amended Fee Agreement, Appellant received $632,700, or 3 1/3% of the total settlement amount. Michael returned home from the hospital on July 12, 2011, and the next day, Appellant moved out of the marital residence. On November 11, 2011, Appellant commenced a divorce action in Butler County, and equitable distribution in that matter has since concluded, with Michael receiving the entire share of the Brayman settlement allocated to him.

On May 3, 2012, Appellant commenced this action against Attorney King and Dillon McCandless, averring legal malpractice/negligence, intentional misrepresentation, breach of contract, and breach of fiduciary duty. Pertinently, Appellant alleged that Attorney King was presented with a conflict of interest in representing both her and Michael and that Attorney King misrepresented the value of her loss of consortium claim in order to induce her to agree to the Amended Fee Agreement. On May 1, 2017, Appellant filed a motion for partial summary judgment as to her counts of legal malpractice and breach of fiduciary duty. Attorney King and Dillon McCandless filed a response, and on June 15, 2017, filed a motion for summary judgment,

seeking dismissal of Appellant's complaint.[3]  Appellant filed a response.  At this juncture, we summarize the parties' competing accounts of the facts, as set forth in their pleadings.

Appellant's complaint and motion for partial summary judgment averred the following: While Michael was in a coma, Attorney King had private meetings and communications with Michael's father, Timothy Rupert, whom Attorney King knew vehemently disliked Appellant, objected to her participation in the accident litigation and potential recovery, and influenced Michael.  Shortly before the Amended Fee Agreement was executed, Attorney King told Appellant that Michael and Timothy would not agree to any settlement if she received any proceeds.  At that point, according to Appellant, Attorney King had a conflict of interest in representing both Appellant and Michael, as their interests were adverse to one another, but Attorney King failed to advise Appellant to seek independent counsel.  Attorney King knew that he could obtain a settlement with Brayman for close to $21,000,000. Meanwhile, the Verdict Search report showed that the average Pennsylvania verdict for loss of consortium exceeded 20% of the total award, but Attorney King concealed this information and instead misrepresented to Appellant that her loss of consortium claim would have little to no value.  Appellant's Amended Complaint, 10/7/14, at 5-6.  Attorney King also failed to inform

---

[3] For ease of discussion, we refer to all of Attorney King and Dillon McCandless' joint pleadings, as well as their appellate brief, as filed by Attorney King.

Appellant that her loss of consortium claim was independent from Michael's claims, could be litigated separately, and would be lost if she settled with Brayman. Attorney King then proposed to reduce his fee by 3 1/3% and allocate this difference to Appellant to satisfy her loss of consortium claim — representing to her that this amount "was better than [what] she could obtain by trial or settlement without Michael's consent" — and thus Michael could settle his claim with Brayman without having to share any of his award with Appellant. Id. at 7. According to Appellant, Attorney King undertook these actions to preserve the approximately $5,700,000 fee he stood to receive, all without having to file any lawsuit against Brayman. Appellant further claimed that Attorney King failed to inform her of the import of the clause that any proceeds to her and Michael would remain the independent property of each.

In his response to Appellant's summary judgment motion, Attorney King denied that he told Appellant that Michael did not want her to receive any portion of a settlement. In his own motion for summary judgment, Attorney King alleged the following: Appellant and Michael appeared to be and acted as an intact family unit, and attorneys routinely represent married couples in all sorts of litigation without breaching any professional duty. Both Michael and Appellant discussed with Attorney King a claim for loss of consortium, and it was Appellant who wished to have a portion of any settlement allocated to her in her own name. Appellant and Michael both freely executed the Amended Fee Agreement and Appellant consented to accept 3 1/3% of any total

settlement.

Pertinently, Attorney King's motion also argued that Appellant's claims were barred by Muhammad v. Strassburger, McKenna, Messer, Shilobod & Gutnick, 587 A.2d 1346 (Pa. Super. 1991), which bars a claim of legal malpractice, in the absence of sufficient allegation of fraud, by a client who is dissatisfied with the amount of a settlement entered while under the representation of the defendant attorney.[4]  In response, Appellant contended that Muhammad did not apply to this case because she was challenging the Amended Fee Agreement, not the settlement with Brayman.

Following a hearing, the trial court denied Appellant's motion for summary judgment and granted in full Attorney King's motion for summary judgment.  Significantly, the court applied Muhammad, and concluded that the evidence would compel a jury to find, inter alia, that: Appellant knew her claim was independent from that of Michael; Appellant and Michael presented

_____

[4] Appellant points out that the Pennsylvania Supreme Court granted allowance of appeal on the following issue:

> Should this Court overturn its decision in Muhammad v. Strassburger, McKenna, Messer, Shilobod & Gutnick, 587 A.2d 1346 (Pa. 1991), which bars legal malpractice suits following the settlement of a lawsuit absent an allegation of fraud, even in instances where an attorney's negligence led to a lesser settlement.

Appellant's Brief at 32, citing McGuire v. Russo, 901 MAL 2016 (alloc. order) (Pa. June 6, 2017).  We further note, however, that on August 23, 2017, the McGuire case was discontinued upon praecipe of the plaintiff/petitioner.

a unified marital front to Attorney King and Attorney King had no reason to believe their interests were adverse to one another; there was no conflict of interest in Attorney King's representation of both Appellant and Michael; and Attorney King did not make misrepresentations to Appellant about the Amended Fee Agreement or settlement. Trial Court Opinion, 8/15/17, at 1-3. Appellant timely appealed and complied with the court's order to file a Pa.R.A.P. 1925(b) statement of errors.

Appellant presents the following issues for our review:

1. Does Muhammad[ ] apply to a claim that [Attorney King] committed fraud, concealed his conflict of interest, and failed to advise [Appellant] of the import of an Amendment to Contingent Fee Agreement he induced her to sign, but where the lower court acknowledges she did not dispute the amount or terms of any settlement?

2. Did the lower court err in expanding Muhammad's scope to include a claim where [Appellant] was fraudulently induced to sign an Amendment to Contingent Fee Agreement months before any settlement was reached on the basis that Muhammad precludes any claim where there was ultimately a settlement and includes everything within the "settlement process"?

3. Is summary judgment appropriate on a fraud claim against [Attorney King] where [he] admitted that he did not inform [Appellant] that a sole property clause that he inserted into an Amendment to Contingent Fee Agreement converted [Michael's] settlement proceeds from marital property to non-marital property in case of a divorce?

4. Did the trial court err in granting summary judgment against [Appellant] on a fraud claim against [Attorney King] where she provided evidence that [Attorney King] intentionally falsified results from a summary of loss of consortium verdicts in Pennsylvania, withheld an expert report evidencing that her loss greatly exceeded the value he represented was the value of her loss of consortium claim, and falsely informed her that whether

- 8 -

she was entitled to any recovery depended on [Michael's] consent, all in an effort to induce her into signing an Amended to Contingent Fee Agreement which limited her right to recovery and protected [Attorney King's] fee?

5. Whether a letter from a client to her attorney of record, accusing him of fraud and malpractice, relieves a lawyer from his obligations to her as a current and former client, before the court permits him to withdraw his appearance?

Appellant's Brief at 3-5.[5]

We address together Appellant's first two issues, which challenge the trial court's application of Muhammad. Appellant maintains that Attorney King's summary judgment motion was based on a mistaken premise: that she was fraudulently induced to settle her claim with Brayman. Instead, Appellant clarifies, her claim was that Attorney King fraudulently induced her into entering the Amended Fee Agreement. Appellant maintains that she has not complained about the amount of the settlement with Brayman nor Attorney King's advice to her to settle with Brayman. Accordingly, Appellant reasons, the trial court improperly expanded the holding in Muhammad, which Appellant contends bars a disappointed client from attacking the amount of a settlement that he entered into upon the advice of counsel. Appellant adds that this case is instead governed by, inter alia, Kilmer v. Sposito, 146 A.3d 1275 (Pa. Super. 2016), which discusses Muhammad and distinguishes an

_____

[5] The issues and corresponding argument in Appellant's brief do not exactly correlate to her statement of questions involved. We address Appellant's issues as presented in the argument section of her brief.

attorney's professional judgment in negotiating a settlement, from the attorney's failure to correctly advise a client on the law pertaining to the client's interests.

We note the relevant standard of review:

A proper grant of summary judgment depends upon an evidentiary record that either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a prima fade cause of action or defense and, therefore, there is no issue to be submitted to the jury. Pa.R.C.P. 1035.2 Note.

\* \* \*

Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions. In reviewing a grant of summary judgment, the appellate Court may disturb the trial court's order only upon an error of law or an abuse of discretion. The scope of review is plenary and the appellate Court applies the same standard for summary judgment as the trial court.

\* \* \*

An entry of summary judgment may be granted only in cases where the right is clear and free from doubt. The moving party has the burden of proving the nonexistence of any genuine issue of material fact. Further, the record must be viewed in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

Buchleitner v. Perer, 794 A.2d 366, 369-70 (Pa. Super. 2002) (some citations omitted).

We first consider Appellant's claim that the trial court erred in expanding Muhammad and applying it to this case. In Muhammad, the plaintiffs' one-month old son died following surgery. Muhammad, 587 A.2d at 1347. The

- 10 -

plaintiffs retained the defendant/attorney to represent them in a medical malpractice action, and eventually accepted a settlement offer from the hospital and doctors (collectively, hospital) for $26,500. Id. Before receiving the money, however, "for reasons unknown," the plaintiffs believed the amount was too little. Id. at 1348, 1349. The hospital petitioned the trial court for a rule to show cause why the settlement agreement should not be enforced. Id. at 1348. Following a hearing, the trial court upheld the settlement agreement, and on appeal, the Superior Court affirmed. Id.

The Muhammad plaintiffs then filed a complaint against their former attorney, averring, inter alia, negligence and fraudulent concealment. Id. at 1348 & n.1. On appeal, the Pennsylvania Supreme Court considered whether the plaintiffs stated a claim for which relief could be granted.[6] Id. at 1348. The Court first extensively discussed public policy favoring settlement agreements, and then held:

> [W]e will not permit a suit to be filed by a dissatisfied plaintiff against his attorney following a settlement to which that plaintiff agreed, unless that plaintiff can show he was fraudulently induced to settle the original action. An action should not lie

---

[6] The trial court had sustained preliminary objections against the plaintiffs' legal malpractice action on collateral estoppel grounds, reasoning that the settlement agreement against the hospital was upheld in court. Muhammad, 587 A.2d at 1348. The Superior Court reversed, holding that collateral estoppel did not apply. Id. Our Supreme Court agreed, holding there were issues in the legal malpractice case against the prior attorney that were not litigated in the prior action against the hospital. Id. The Court then proceeded to consider whether the plaintiffs stated a claim for which relief could be granted. Id.

against an attorney for malpractice based on negligence and/or contract principles when that client has agreed to a settlement. Rather, only cases of fraud should be actionable.

\* \* \*

[T]here must be redress for the plaintiff who has been fraudulently induced into agreeing to settle. It is not enough that the lawyer who negotiated the original settlement may have been negligent; rather, the party seeking to pursue a case against his lawyer after a settlement must plead, with specificity, fraud in the inducement. "One may not . . . induce another to contract by fraudulent misrepresentations."

Id. at 1348, 1351 (emphases added).

In Kilmer, upon which Appellant relies, the plaintiff/wife, on her attorney's advice, elected to take against her late husband's will, which gave her 1/3 of his estate. Kilmer, 146 A.3d at 1276. The wife subsequently learned that "pure operation of law . . . would have entitled [her] to one-half of the estate as a surviving spouse who had married the testator after he made his will." Id. at 1277. The wife retained new counsel and eventually settled with the estate and agreed to take a 41.5% share. Id. The wife then sued her former attorney, alleging professional negligence and breach of contract for failing to correctly advise her on the law. Id. at 1277, 1279. The trial court sustained the defendant/attorney's preliminary objections, finding that the claims were barred by Muhammad. Id. at 1278.

On appeal, this Court reversed, reasoning:

Muhammad . . . stands for the proposition that dissatisfied plaintiffs may not later challenge an attorney's professional judgment with respect to an amount of money to be accepted in a settlement, unless plaintiffs plead and can prove they were

fraudulently induced to settle. As such, the Muhammad decision is inapposite to the present action, which focuses not on [the attorney's] professional judgment in negotiating a settlement — indeed, he was no longer [the wife's] attorney when [the wife] ultimately settled — but on his failure to advise her correctly on the law pertaining to her interest in her late husband's estate. The facts of the case sub judice, therefore, take it outside the scope of the Muhammad prohibition against second-guessing an attorney's judgment as to settlement amounts.

Id. at 1279.

Here, the trial court specifically rejected Appellant's argument that because she was not challenging the settlement with Brayman — and instead was challenging the Amended Fee Agreement — Muhammad did not apply. Trial Court Opinion, 8/15/17, at 1. The court reasoned:

[T]he record in this case unequivocally demonstrates that the amended agreement was part of the settlement negotiation process. . . . Any remaining factual differences between the present case and Muhammad are differences without distinction, and the Court finds that the rule expressed in Muhammad requiring a showing a fraud applies in the present case.

Trial Court Opinion, 8/15/17, at 1-2.

Upon review, we do not agree that the record supports a finding that the Amended Fee Agreement — which was between Appellant, Michael, and Attorney King — was a part of the negotiation between Appellant and Michael and Brayman. Where the Amended Fee Agreement reduced Attorney King's fee and shifted the costs of litigation from Appellant and Michael to Attorney King, the negotiations leading to these changes were between Appellant, Michael, and Attorney King. Furthermore, we agree with Appellant that this case is governed by Kilmer. Similar to the wife in that case, Appellant is not

challenging the underlying settlement agreement with Brayman, but instead is alleging, inter alia, that Attorney King failed to advise her correctly on the law pertaining to her interest in a loss of consortium claim and misrepresented this interest in order to induce her into agreeing to the Amended Fee Agreement. Accordingly, we hold that this matter falls outside the scope of Muhammad. See Kilmer, 146 A.3d at 1280.

In Appellant's third and fourth claims, she avers that in considering Attorney King's summary judgment motion, the trial court improperly construed the facts in his favor. Appellant's Brief at 48-54, citing Trial Court Opinion, 8/15/17, at 2-3 (evidence could compel jury to find: that Attorney King merely gave his opinion as to the value of Appellant's claim, did not make any misrepresentations regarding the Amended Fee Amendment, and adequately explained to Appellant that her claim was independent from Michael's; and that Appellant and Michael presented a united marital front and Attorney King had no reason to believe their interests were adverse or that any conflict of interest existed). Appellant then sets forth her account of the facts and argues they contradict the trial court's findings and support her claims.

To the extent Appellant argues this Court should credit her evidence and hold that she has succeeded in establishing her claims, we do not make such findings of facts. Nevertheless, we are satisfied that the allegations in Appellant's complaint set forth sufficient facts — without regard to their

veracity or weight — to withstand Attorney King's summary judgment motion. In crediting Attorney King's recitation of facts, the trial court erred by not construing the record in the light most favorable to Appellant and resolving all doubts as to a genuine issue of material fact against Appellant. See Buchleitner, 794 A.2d at 369-70. The parties' competing narratives of the facts presented material issues of general fact that were not for the trial court to reconcile on summary judgment review. Instead, "the better resolution of this matter is to put Appellant to [her] burden of proof in further proceedings." See id. at 367. Accordingly, we reverse the order granting Attorney King's motion for summary judgment and denying Appellant's motion for partial summary judgment.

Appellant's final issue concerns her attempt to obtain discovery from Attorney King. On November 16, 2011, five days after Appellant commenced the divorce action, her current counsel, Maurice A. Nernberg, Esquire, sent a letter to Attorney King, which stated that Appellant had retained him relative to the action against Brayman, and that it was Appellant's "intent to file an action against" Dillon McCandless for legal malpractice. Letter, 11/16/11. Thus, the trial court held that the attorney-client relationship between Appellant and Attorney King ended on November 16, 2011, because Attorney

King knew upon receiving the letter that he was discharged.[7]  Order, 9/19/16, citing Pa.R.Prof.C. 1.16(a)(3) ("a lawyer . . . shall withdraw from the representation of a client if . . . the lawyer is discharged").

On appeal, Appellant avers that this order effectively and improperly prohibited her from "obtain[ing] any discovery beyond that date."  Appellant's Brief at 54.  She contends that her attorney-client relationship with Attorney King did not end until February 21, 2012, when Attorney King formally withdrew his appearance with leave of court.  Appellant argues that until February 12, 2012, Attorney King continued to have a duty to her to not disclose privileged information or work to her detriment.  Appellant claims that discovery after November 16, 2011, is important because after that date, Attorney King worked with Michael and "his domestic attorney, Douglas Linn, to further harm [her] and make it more difficult for her to pursue and prove her claims against [Attorney] King."  Id. at 54-55.

This Court has stated:

> Generally, discovery orders are deemed interlocutory and not immediately appealable because they do not dispose of the litigation.  A non-final order may be reviewed if it is separable from and collateral to the main cause of action, the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.  Pa.R.A.P. 313(b).  All three factors set forth in Rule 313 must be satisfied.

_____

[7] The Honorable R. Stanton Wettick, Jr., issued this September 19, 2016 order.  The summary judgment order was issued by the Honorable Robert J. Colville.

Leber v. Stretton, 928 A.2d 262, 265 (Pa. Super. 2007) (some citations omitted).

Because we reverse the order granting summary judgment to Attorney King and remand for further proceedings, any discovery order, at this juncture, would be interlocutory and not immediately appealable. See id. Appellant has presented no discussion as to whether the court's order should be reviewed as separable and collateral to the main cause of action under Pa.R.A.P. 313. Accordingly, no relief is due.

Finally, we consider Attorney King's two motions filed with this Court. First, he asks this Court to strike references to expert reports in Appellant's brief. Attorney King contends that these reports, generally relating to past loss of consortium awards in Pennsylvania and to the value of Appellant's loss of consortium claim against Brayman, were not a part of the record before the trial court on summary judgment. As we have not considered the references in our appellate review and disposition, we deny Attorney King's motion as moot.

In his second motion, Attorney King asks us to vacate our January 11, 2018 order which permitted Attorney Linn to intervene in this appeal. Again, the request is moot, as our merits analysis was conducted and rendered based on the record and independent of Attorney Linn's intervenor status. We thus deny this second motion.

Order granting Attorney King's motion for summary judgment and

denying Appellant's motion for partial summary judgment reversed. Attorney King's motion to strike references in Appellant's brief to expert reports and motion to vacate this Court's order of January 11, 2018 denied. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/4/2018