2024 PA Super 37

| | | |
|---|---|---|
| STACY PARKS MILLER | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MICHELLE SHUTT | : | |
| | : | No. 263 MDA 2023 |
| APPEAL OF: JUDGE PAMELA A. RUEST | : | |

Appeal from the Order Entered January 31, 2023
In the Court of Common Pleas of Centre County Civil Division at No(s):
2015-3434

BEFORE:  LAZARUS, J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

OPINION PER CURIAM:                                    **FILED: MARCH 5, 2024**

The Honorable Pamela A. Ruest, Judge of the Court of Common Pleas of Centre County, appeals from the order denying her motion to quash a subpoena and for a protective order. Because we determine the judicial deliberative process privilege is implicated such that Judge Ruest is immune from testifying, we reverse.

In January 2018, Stacy Parks Miller, plaintiff below, filed a complaint naming Michelle Shutt as a defendant and alleged that Shutt falsely accused Parks Miller of forging Judge Ruest's signature on an order. In sum,

> [t]he underlying cause of action focuses on the circumstances surrounding the issuance of a certain Bail Order ["Bail Order" or "Order"] which appears to bear Judge Ruest's signature. At the

_____

[*] Former Justice specially assigned to the Superior Court.

time of the Order's issuance Plaintiff, Stacy Parks Miller, was the elected District Attorney of Centre County who alleges that she was involved in an "undercover sting operation" involving a murder for hire prosecution. As part of her plan[,] she intended to obtain a "fake" bail order to entice an inmate to further her cause in the prosecution. She alleges that she discussed the plan and need for a fake bail order with Judge Ruest and that, based on those discussions, Judge Ruest signed the order in furtherance of the plan. During this period of time[,] Defendant Michelle Shutt was an executive assistant to Plaintiff [Parks Miller] and, claiming that she was present and aware of the circumstances, reported to others that [Parks Miller] had forged the [J]udge's signature. The issue of unlawful forgery of a [c]ourt order becomes the key issue in the civil claim.

Trial Court Opinion, filed 1/31/23, at 1-2.

Shutt issued a subpoena for Judge Ruest, a non-party in the underlying action, to appear for a deposition to be questioned about the Bail Order that Shutt claims Parks Miller forged. The notice of deposition indicated that Shutt intended to depose Judge Ruest "on all matters not privileged which are relevant and material to the issues and subject matter involved in the [underlying] action." Notice of Deposition, dated 6/20/22, at 1. According to Shutt's counsel, the scope of the deposition would be as follows:

[W]e are only interested in asking Judge Ruest about events and facts pertaining to an alleged [B]ail [O]rder that Plaintiff Parks Miller is claiming Judge Ruest signed after discussions with the DA's office. Our client claims that [Parks Miller] signed and forged Judge Ruest's signature. We have no interest in any reasoning or thought process behind the signing or non-signing of the Order. We simply want to ask Judge Ruest if she remembers conversations with the DA's office about the signing of the "fake bail order" and whether she remembers signing the Order.

Email from Shutt's Counsel to Judge Ruest's Counsel, dated 3/30/22.

- 2 -

Judge Ruest filed a motion to quash the subpoena and for a protective order arguing that she was immune from testifying about her judicial actions. The trial court denied Judge Ruest's motion.

In denying the motion, the court concluded the core issue is the factual determination of whether Judge Ruest did or did not sign the Bail Order, which does not implicate her deliberative process privilege. Trial Ct. Op. at 2. While it recognized the importance of the judicial deliberative process privilege, it found that "the factual answers which could be provided [by deposing Judge Ruest] are critically important to the fact-finding to be made by the jury." *Id.* at 3. It explained that if Judge Ruest testifies that she signed the Bail Order, Shutt's claim that Parks Miller forged the order would be defeated. *Id.* at 2. The court stated if Judge Ruest denies signing the Bail Order, then Shutt "would have an open door to her allegation that the signature was a forgery." *Id.* It found that if Judge Ruest does not recall signing the order or could not identify with certainty that the order contained her signature, then Parks Miller and Shutt would have to rely on other circumstantial evidence to convince the jury of the order's authenticity. *Id.* The court explained:

> The deposition of Judge Ruest, while focusing predominantly on the key issue as to whether she did or did not sign the Order[,] a purely factual question[,] could be followed, in the event of a negative answer, with another question as to whether she had any recollection of the Order[,] again a purely factual question. The inquiry could proceed as to whether she could, with certainty, identify her signature as authentic. Other questions could pursue her recollection as to any discussions she may have had with Plaintiff about the purpose of the Order and the process by which the Order could have been returned to [Parks Miller]. Off-limits

would include any questions which attempted to elicit her thinking regarding the need or propriety of such a "fake" bail order.

*Id.* at 3 (brackets from original removed).

Judge Ruest filed the instant appeal as a collateral order appeal under Pa.R.A.P. 313. This Court directed Judge Ruest to show cause why the order was an appealable collateral order. In response to the rule to show cause, Judge Ruest argued that if she was compelled to testify as to her judicial actions, her deliberative process privilege and immunity would be irreparably lost. On March 22, 2023, the rule to show cause order was discharged, and the issue was referred to this panel.

Judge Ruest raises the following issues:

1. Did the trial court err in denying Judge Ruest's motion to quash the subpoena and for a protective order?

2. Did the trial court err by holding that a judge is subject to inquiry by parties in civil litigation regarding the facts and circumstances surrounding the judge's judicial actions?

3. Even assuming the circumstances surrounding a judge's judicial actions are relevant in civil litigation, did the trial court err because the unnecessary burdens and consequent chilling effect to the judiciary weigh against ordering a judge to testify about the circumstances surrounding the judge's judicial actions?

Judge Ruest's Br. at 4.

We initially consider whether we have jurisdiction over this appeal. "The appealability of an order directly implicates the jurisdiction of the court asked to review the order." *Bailey v. RAS Auto Body, Inc.*, 85 A.3d 1064, 1067 (Pa.Super. 2014) (citation omitted). This Court may "inquire at any time, *sua sponte*, whether an order is appealable." *Id.* at 1068 (citation omitted). "As a

general rule, only final orders are appealable, and final orders are defined as orders disposing of all claims and all parties." *In re Bridgeport Fire Litigation*, 51 A.3d 224, 229 (Pa.Super. 2012) (citation omitted); *see also* Pa.R.A.P. 341. Discovery orders typically are not final orders because they do not end the case. *See Leber v. Stretton*, 928 A.2d 262, 265 (Pa.Super. 2007). One exception to this rule, however, is that a party has a right to appeal a collateral order pursuant to Pa.R.A.P. 313.

Judge Ruest maintains the order is an appealable collateral order and meets the three-prong test set forth in Pa.R.A.P. 313. Rule 313 defines a collateral order as "an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b). "[A]n order is separable from the main cause of action if it is entirely distinct from the underlying issue in the case and if it can be resolved without an analysis of the merits of the underlying dispute." *Keesee v. Dougherty*, 230 A.3d 1128, 1132 (Pa.Super. 2020) (citation omitted). "[A] right is important if the interests that would go unprotected without immediate appeal are significant relative to the efficiency interests served by the final order rule." *Id.* (citation omitted). "[A] right sought to be asserted on appeal will be 'irreparably lost' if, as a practical matter, forcing the putative appellant to wait until final judgment before obtaining appellate review will deprive the appellant of a meaningful remedy." *Id.* (citation omitted).

Here, the order denying Judge Ruest's motion to quash is "separable" from the underlying action, as "the question of whether a judicial officer can be compelled to testify does not require an analysis of underlying . . . claims." **Leber**, 928 A.2d at 266. Next, the order involves a right that is too important to be denied review. Indeed, "the deliberative process privilege has been determined to meet the importance prong of Rule 313." **Id.** Lastly, if review is postponed until final judgment in the case, the claim will be irreparably lost. The order effectively results in the loss of the confidentiality of potentially privileged information because once disclosed, there would be no meaningful review after final judgment. **See id.**; **see also Commonwealth v. McClure**, 172 A.3d 668, 684 (Pa.Super. 2017) (finding orders denying judge's motions to quash subpoenas were appealable collateral orders because the orders were separable from underlying action, orders implicated important deliberative process privilege, and postponement of review would result in irreparable loss of the confidentiality of potentially privileged information). Having found that Judge Ruest satisfied all three prongs of the collateral order doctrine, we conclude this Court has jurisdiction over this appeal, and we now address the merits of her claim.

Judge Ruest asserts Shutt's subpoena should be quashed because, under **Leber**, judges are immune from testifying in civil cases about their judicial conduct. Appellant's Br. at 11 (citing **Leber**, 928 A.2d at 270). While Judge Ruest recognizes that judges "do not have personal immunity from testifying in civil litigation for actions outside of their judicial duties," she

maintains "immunity does attach for matters involving their judicial actions." *Id.* at 13-14. She states that the immunity is "rooted" in the deliberative process privilege and that even a judge's ministerial actions, including signing or not signing an order, are considered "judicial actions" to which the immunity attaches. *Id.* at 8-9, 11. Accordingly, Judge Ruest argues "[i]t is unworkable and impractical at a deposition to query [her] about the [B]ail [O]rder without exposing her judicial deliberative process." *Id.* at 26.

"The standard of review regarding a motion to quash a subpoena is whether the trial court abused its discretion." *Rogers v. Thomas*, 291 A.3d 865, 887 n.26 (Pa.Super. 2023). However, if the issues an appellant raises are purely questions of law, this Court's standard of review is *de novo*, and its scope plenary. *Id.*

"Our courts have long recognized that judges may not be compelled to testify regarding their thought processes in reaching official judgments." *McClure*, 172 A.3d at 686. This concept, known as the deliberative process privilege, "protects confidential deliberations of law, or policymaking that reflect opinions, recommendations or advice." *Leber*, 928 A.2d at 268 (citation omitted). "The purpose for the privilege is to allow the free exchange of ideas and information within government agencies." *Commonwealth v. Vartan*, 733 A.2d 1258, 1264 (Pa. 1999) (plurality opinion). The privilege "benefits the public, and not the officials who assert that privilege," and "recognizes that if governmental agencies were forced to operate in a fishbowl, the frank exchange of ideas and opinions would cease and the quality

of administrative decisions would consequently suffer." ***Leber***, 928 A.2d at 268 (citation and internal quotation marks omitted).

For the deliberative process privilege to apply, several requirements must be met.

> First, the communication must have been made before the deliberative process was completed. Secondly, the communication must be deliberative in character. It must be a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal policy matters. Information that is purely factual, even if decision-makers used it in their deliberations[,] is usually not protected.

***Id.*** (internal quotation marks and citation omitted).

In ***Leber***, this Court held that pursuant to the deliberative process privilege, "judicial officers are immune from testifying as to information surrounding their conduct during an official proceeding." ***Id.*** at 270. There, Leber, the District Attorney of Potter County, filed defamation suits against an attorney and a newspaper, alleging that the attorney had defamed him by stating Leber was unethical when Leber publicly criticized two judges for their judicial decisions, and that the newspaper defamed him by printing the attorney's statements. ***Id.*** at 263-64. Leber's statements about the two judges stemmed from the judges' dismissal of an underlying case in which they determined Leber had not established a *prima facie* case. ***Id.*** at 264.

Leber served the judges with a subpoena to testify. ***Id.*** In seeking the judges' testimony, Leber maintained that he had "no intention of inquiring into either privileged communications between [the judges] and their attorney or into their decision making process 'other than to inquire of the facts upon

which those decisions are based.'" ***Id.*** at 266 (quoting Leber's Brief at 3). Leber conceded, however, that he ultimately sought to ask the judges, "Why did you decide there was no *prima facie* case?" ***Id.*** Leber asserted "the question is legitimate and relevant, but admit[ted] that such question may delve into the [judges'] thought processes[.]" ***Id.*** The judges filed motions to quash the subpoenas and for protective orders, which were denied. ***Id.*** at 264.

In reversing the trial court's decision, we concluded that because requiring judges to be subject to such questioning would "necessitate[] delving into the thought processes they utilized" in their judicial roles, judges were immune from giving such testimony:

> [Leber's] desire to question [the judges] regarding events which occurred in the course of their judicial duty not only will take time away from their role as district judges but also **necessitates delving into the thought processes they utilized in those positions**. As a matter of public policy, we find this type of questioning unacceptable and hold that **judicial officers are immune from testifying as to information surrounding their conduct during an official proceeding**.

***Id.*** at 270 (emphasis added).

We distinguished the case from one in which "the testimony of a judicial officer is sought regarding a matter in which he or she merely happened to witness or was personally involved in a circumstance that later becomes the focus of a legal proceeding, and this matter does not involve his or her judicial decision-making." ***Id.*** at 270 n.12. In that situation, "such testimony would

not implicate the judicial officer's thought processes in his or her professional capacity." *Id.*

In *McClure*, this Court reaffirmed our holding in *Leber* but found the privilege not implicated because the conduct at issue – *ex parte* communication – was "outside the protected sphere of the judge's internal deliberations." 172 A.3d at 690 (quoting *In re Enforcement of Subpoena*, 972 N.E.2d 1022, 1033 (Mass. 2012)). McClure was convicted of assault and related offenses. *Id.* at 672. On appeal, she claimed misconduct during her trial on the part of the trial judge and prosecutors alleging they engaged in *ex parte* communications, which denied her a fair trial. *Id.* at 672, 676. McClure served the trial judge with a subpoena to testify and produce copies of any communications, including text messages, between him and the prosecutors at the time of her case. *Id.* at 677, 679. The judge filed a motion to quash, which was denied. *Id.* at 677.

In affirming the denial of the motion to quash, we held that the deliberative process privilege does not protect *ex parte* communications from disclosure. *Id.* at 690. We pointed out that the policy objective of the deliberative process privilege is to protect legitimate judicial decision-making and extending the privilege to *ex parte* communications would not serve that objective. *Id.* at 691. We emphasized that "[i]n seeking copies of any *ex parte* communications, McClure does not seek to intrude into deliberations that were part of proper and legitimate decision-making, but instead she seeks to find out whether there were outside influences that might have tainted her criminal

trial." **Id.** at 689. Accordingly, we found that "in seeking to determine whether such forbidden communications took place in this case, McClure is not invading a part of the judicial process that deserves privileged protection." **Id.** at 690.

We nevertheless additionally held:

> [A]ny inquiry into [the trial judge's] thought processes and deliberative processes during McClure's trial is barred under the privilege, and McClure may not ask about such matters in any testimony by [the trial judge] pursuant to her subpoena; she thus may not ask [the trial judge] why he rendered particular decisions in her case or whether those decisions were influenced by specified information.

**Id.** at 691.

Here, the subpoena must be quashed. Shutt seeks Judge Ruest's testimony as to her alleged signing of the Bail Order. This undeniably implicates the "protected sphere" of Judge Ruest's conduct in an official proceeding. If the subpoena stood, Judge Ruest would be compelled to testify as to the alleged signing of an order, which is perhaps the most fundamental judicial action. There is no allegation of misconduct against Judge Ruest or that she acted outside of her proper judicial function, as was alleged in **McClure**. Under **Leber**, Judge Ruest is immune from giving such testimony.

As to Shutt's attempt to distinguish the testimony she seeks as purely factual and separate from inquiry into Judge Ruest's thought process, this Court in **Leber** rejected this argument. 928 A.2d at 269. Questioning a judge during a deposition about factual events that occurred during a judicial proceeding while skirting any inquiry into the judge's thought process is not practicable. Indeed, Shutt's counsel admits that she intended to ask Judge

Ruest about the circumstances surrounding the alleged signing of the Bail Order. **See** Appellee's Br. at 5. As recognized in **Leber**, the questioning of Judge Ruest under these facts would not only take time away from her role as a judge but also would necessitate "delving into the thought processes [she] utilized in th[at] position[.]" 928 A.2d at 270. As a result, Judge Ruest is protected from testifying on this issue. We therefore reverse the trial court's order denying the motion to quash.

Order reversed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/05/2024